**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONNY DE LOS SANTOS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> GSCR LLC, MARIO GATTI, and MATTHEW GUIFFRIDA, Jointly and Severally, <br><br> Defendants. | **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Ronny De Los Santos (the "Plaintiff"), individually and on behalf of all others similarly situated, as collective and class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff worked as dishwasher and line cook at Defendants' restaurant located in Montauk, Suffolk County, New York.  For his work, Plaintiff was not paid overtime premiums for hours worked over forty (40) in a given workweek.

1

2.     Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiff also brings claims for failure to pay spread of hours premiums, for failure to timely pay all wages owed and for failure to provide proper wage statements and wage notices pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.     Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the relevant NYLL limitations period.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

6.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The

thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiff:**

8.    Plaintiff Ronny De Los Santos ("De Los Santos") was, at all relevant times, an adult individual residing in Suffolk County, New York.

9.    Throughout the relevant time period, Plaintiff performed work for Defendants at their restaurant located at 41 S. Euclid Ave., Montauk, NY 11954.

10.    Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

11.    GSCR LLC is an active New York Corporation doing business as "Muse @ The End Restaurant" ("Muse @ The End" or the "Corporate Defendant"), with its principal place of

business at 41 S. Euclid Ave., Montauk, NY 11954.

12.     According to the New York State Department of State, Division of Corporations, GSCR LLC was registered on January 7, 2015.

13.     At all relevant times, the Corporate Defendant was and continues to be a "corporation engaged in commerce" within the meaning of the FSLA.

14.     Upon information and belief, Mario Gatti ("Gatti") is an owner and operator of the Corporate Defendant.

15.     Upon information and belief, Matthew Guiffrida ("Guiffrida" and, collectively with Gatti, the "Individual Defendants" and, collectively with the Corporate Defendant, the "Defendants") is an owner and operator of the Corporate Defendant.

16.     The Individual Defendants maintained operational control over the Corporate Defendant by overseeing business operations, supervising employees, determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through possessing the authority to hire and fire employees, including Plaintiff.

17.     The Individual Defendants jointly employed Plaintiff, and all similarly situated employees, by acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees.

18.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally in their direction and control of Plaintiff and the Defendants' other similarly situated employees and are each "employers" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendant.

19.     At all relevant times, Defendants have been and continue to be employers engaged

in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

20.     At all relevant times, Defendants employed, and/or continue to jointly employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

21.     At all relevant times, Plaintiff, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

22.     Upon information and belief, at all relevant times, the Corporate Defendant have had gross revenues in excess of $500,000.00.

## FLSA COLLECTIVE ACTION ALLEGATIONS

23.     Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since November 17, 2018, and through the entry of judgment in this case (the "Collective Action Period") who worked as non-management employees at Muse @ The End Restaurant (the "Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiff and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiff and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

26.     Pursuant to the NYLL, Plaintiff brings his Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since April 3, 2015, and through the entry of judgment in this case (the "Class Period") who worked as non-management employees at Muse @ The End Restaurant (the "Class Members").

27.    <u>The Class Members are readily ascertainable</u>. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

28.    <u>The Class Members are so numerous that joinder of all members is impracticable</u>.

29.    Upon information and belief, there are in excess of forty (40) Class Members.

30.    <u>The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class</u>. These common questions include, but are not limited to:

    a.    whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

    b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

    c.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    d.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members spread of hours premiums for days when they worked in excess of ten (10) hours and/or worked a split shift;

    e.    whether Defendants failed to pay Plaintiff and the Class Members all wages owed for work in a given workweek within seven (7) days after the end of

the workweek;

f.  whether Defendants failed to provide Plaintiff and the Class Members with an accurate statement of wages with every wage payment as required by the NYLL;

g.  whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

h.  whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

i.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

31.  <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a non-management restaurant employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek, was not paid spread of hours premiums for days when he worked in excess of ten (10) hours, was not paid all wages owed to him within seven (7) days after the end of a given workweek, and was not provided wage notices or accurate wage statements. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

32.  <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

33.    Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

34.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

35.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

36.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Restaurant

37.    Upon information and belief, Defendants have owned and operated Muse @ The End Restaurant since it opened in or around 2015.

38.    Upon information and belief, the Individual Defendants have owned, operated and managed additional restaurants on Long Island including Muse Restaurant & Aquatic Lounge and Muse In the Harbor.

39.    Throughout the relevant time period, the Individual Defendants have owned, operated and managed Muse @ The End Restaurant through the Corporate Defendant

40.    Upon information and belief, throughout the relevant time period, Defendant Gatti has been actively involved in the business operations of Muse @ The End and takes an active role in ensuring that the place is run in accordance with his and the other Individual Defendant's

procedures and policies.

41.    Upon information and belief, during the relevant time period until in or around 2020, Defendant Guiffrida was actively involved in the business operations of Muse @ The End and takes an active role in ensuring that the place is run in accordance with his and the other Individual Defendant's procedures and policies

42.    According to the New York State Liquor Authority, Division of Alcoholic Beverage Control, the Individual Defendants own or have owned the liquor license to Muse @ The End and as such are "responsible for the activities of employees and patrons in all parts of the licensed premises" and is "required to maintain adequate books and records of all the transactions involving [the] licensed business. This includes records recording [the licensee's] employees, whether full or part-time." (*See* State Liquor Authority, Retail Licensees Handbook, at 17).[1]

43.    Upon information and belief, throughout the relevant time period, Defendant Gatti has been a constant presence at Muse @ The End, where he is present on a daily or near daily basis, where he oversees business operations of the restaurant, supervises employees, interacts with vendors, hires employees, and takes an active role in ensuring that the place is run in accordance with his procedures and policies.

44.    Upon information and belief, during the relevant time period until in or around 2020, Defendant Guiffrida was the executive chef at Muse @ The End and as such communicated on a daily basis with employees including sous chefs regarding the menu, inventory, and employee issues. Thereafter, when Defendant Guiffrida was at the restaurant, approximately once per month, he supervised employees, reviewed and set the menu, gave orders regarding inventory and

---

[1] Available at https://sla.ny.gov/system/files/documents/2019/09/State%20Liquor%20Authority-RetailLicensees%20Handbook_2019_forweb.pdf

provisions, discussed employee issues with managers, and took an active role in ensuring that the place is run in accordance with his procedures and policies.

45.     Upon information and belief, Defendant Guiffrida was originally the executive chef at Muse @ The End, as well as the other Long Island Muse restaurants.

46.     Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at Muse @ The End Restaurant, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiff's Work for Defendants**

47.     **Plaintiff De Los Santos** was employed by Defendants as a back of the house employee performing primarily dishwashing and line cook duties, from in or around September 2017 through approximatley the end of August 2021 (the "De Los Santos Employment Period").

48.     From in or around September 2017 to in or around May 2018, Plaintiff worked as a dishwasher. In or around June 2018, Plaintiff was promoted to line cook.

49.     Throughout the De Los Santos Employment Period, Plaintiff typically worked significantly more hours during the summer season, which lasted from April or May through September or October, and fewer hours during the winter season because Muse @ The End was typically much busier during the summer season than during the winter season.

50.     During the summer season, Plaintiff was typically scheduled to work six (6) days but often worked seven (7) days to fill in for coworkers or help out when the restaurant was extremely busy, from between approximately 11:00 am and 12:00 noon to approximately 11:00 pm or 11:30 pm. In total, Plaintiff typically worked between seventy-two (72) and eighty (80) hours per week, and sometimes more.

51.     During the winter season, Plaintiff typically worked five (5) days per week, with Tuesdays, Wednesdays, or sometimes Mondays off, depending upon the level of business at the restaurant, from approximately 2:00 pm to between approximately 9:00 pm and 9:30 pm, and sometimes later for a total of between approximately thirty-five (35) and thirty-eight (38) hours per week. Between late October and February, during busy holiday shifts, Plaintiff was often required to arrive one (1) hour early and/or to stay between one (1) and three (3) hours after the usual end of his shift. As a result, during busy holiday weeks, Plaintiff typically worked between forty and forty-two (40-42) hours.

52.     Throughout the De Los Santos Employment Period, Plaintiff was required to clock in when he arrived at the beginning of his shift and clock out after he finished. Initially, he used a timeclock to track his hours; when he began working as a line cook, he clocked his hours on the restaurant's Point of Sale (POS) system.

53.     Throughout the De Los Santos Employment Period, if Plaintiff was able to take a break, it typically lasted no more than five (5) or ten (10) minutes for him to quickly eat some food.

54.     During the time period that Plaintiff worked as a dishwasher, he was paid thirteen dollars ($13.00) per hour for all hours worked, including hours worked over forty (40) per week, and he was not paid spread of hours premiums when he worked in excess of ten (10) hours per day.

55.     During the time period that Plaintiff worked as a dishwasher, he was paid his wages entirely in cash and did not receive a paystub or any other document with his payment of wage showing his total hours worked, regular and overtime rates, or net and gross wage payment.

56.     From in or around June 2018, when Plaintiff became a line cook, through 2020,

Plaintiff was paid eighteen dollars ($18.00) per hour for all hours worked, including hours worked over forty (40) per week, and he was not paid spread of hours premiums when he worked in excess of ten (10) hours per day.

57.     Throughout 2021 through the end of the De Los Santos Employment Period, Plaintiff was paid twenty-two dollars ($22.00) per hour for all hours worked, including hours worked over forty (40) per week, and he was not paid spread of hours premiums when he worked in excess of ten (10) hours per day.

58.     From June 2018 through the end of the De Los Santos Employment Period, Plaintiff was typically paid up to forty (40) hours per week by payroll check, except for a period of approximately one (1) year between 2019 and 2020 when he received wages for only twenty (20) hours per week in check. These hours were reflected on a paystub that he received with his check, which was often inaccurate, particularly during the summer season and for the period between 2019 and 2020 when the checks only reflected twenty (20) hours. During this period, he was paid in cash for the remainder of his hours worked and did not receive a paystub or any other document with his wages reflecting his total hours worked or gross or net wage payment.

59.     Throughout the De Los Santos Employment Period, Plaintiff frequently complained about not receiving overtime premiums when he worked overtime during the summer. At no time did he receive a response explaining why he was not paid overtime.

60.     At no time during the De Los Santos Employment Period did Plaintiff receive a wage notice setting forth his hourly and overtime pay rates, his regular payday, or other information required by NYLL § 195(1)(a).

61.     Throughout the De Los Santos Employment Period, the wage statements that Plaintiff received were frequently inaccurate, particularly during the summer season and during

the approximately one (1) year between 2019 and 2020 when his payroll checks and paystubs only showed twenty (20) hours per week.

62.    Plaintiff was aware that Defendants' failure to pay overtime premiums and spread of hours premiums and failure to provide wage notices and accurate wage statements were corporate policies that applied to all non-management employees.

**Defendants' Unlawful Corporate Policies**

63.    Plaintiff and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to overtime premiums and spread of hours premiums.

64.    Plaintiff has spoken with other employees of Defendants who likewise did not receive overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiff overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of Defendants which applies to non-management employees throughout the relevant time period.

65.    Plaintiff has spoken with other employees of Defendants who likewise did not receive spread of hours premiums for days worked in excess of ten (10) hours and/or when they worked a split shirt. Defendants' failure to pay spread of hours premiums consisting of one (1) extra hour's pay at minimum days on days when they worked in excess of ten (10) hours per day is a corporate policy of Defendants which applies to non-management employees throughout the relevant time period.

66.    Defendants' failure to provide accurate wage statements and wage notices were corporate policies that applied to all non-management employees throughout the relevant time period.

67.     Throughout the relevant time period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that require little skill and no capital investment.  Upon information and belief, such individuals were not paid time and one-half their regular rate when working in excess of forty (40) hours per week.

68.     Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

69.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

70.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

71.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

72.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## <u>NEW YORK LABOR LAW – UNPAID OVERTIME</u>
**(Brought on Behalf of Plaintiff and the Class Members)**

73.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

75.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## <u>NEW YORK LABOR LAW - FAILURE TO PAY WAGES</u>
**(Brought on Behalf of Plaintiff and the Class Members)**

76.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

77.     Pursuant to NYLL § 191 and the cases interpreting same, workers such as Plaintiff and the Class Members are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which wages are earned." Thus, Defendants violated NYLL § 191 by failing to pay Plaintiff and the Class Members all of their wages earned within the week

such wages were due.

78.    Pursuant to NYLL § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiff and the Class Members, that is not otherwise authorized by law or by the employee.

79.    By withholding wages and overtime compensation from Plaintiff and the Class Members, pursuant to NYLL § 193 and the cases interpreting same, Defendants made unlawful deductions in wages owed to Plaintiff and the Class Members.

80.    Defendants' failure to pay Plaintiff and the Class Members wages of any kind for several hours of work in certain weeks violated NYLL §§ 191 and 193.

81.    Defendants' failure to comply with NYLL §§ 191 and 193 caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants his unpaid wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiff and the Class Members)**

82.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

83.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day,

in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including

N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

84.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the

Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are

entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs

and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS**
**(Brought on Behalf of Plaintiff and the Class Members)**

85.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each

and every allegation of the preceding paragraphs hereof with the same force and effect as though

fully set forth herein.

86.     Defendants have willfully failed to supply Plaintiff and Class Members with an

accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of

work covered by that payment of wages; name of employee; name of employer; address and phone

number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day,

week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if

applicable; deductions; and net wages.

87.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are

entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each

day that the violations occurred or continue to occur, up to a maximum of five thousand dollars

($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages

17

as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SIXTH CAUSE OF ACTION**
<u>**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES**</u>
**(Brought on Behalf of Plaintiff and the Class Members)**

88.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

90.     Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.      An award of compensatory damages as a result of Defendants' failure to pay spread of hours premiums pursuant to the NYLL and supporting regulations;

h.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

i.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay spread of hours premiums pursuant to the NYLL and supporting regulations;

j.      Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

k.      Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1)(a) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

l.      An award of prejudgment and post-judgment interest;

m.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        November 17, 2021

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____
Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative*
*FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered
Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholder of **GSCR LLC** are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and the Class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of **GSCR LLC** and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporations concluded for Plaintiff within the past 180 days.

Dated:  November 17, 2021

_____
Brent. E. Pelton

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of GSCR LLC d/b/a Muse At The End Restaurant, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct.  I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first.  I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.



_____              _____
Signature                                    Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de GSCR LLC d/b/a Muse At The End Restaurant y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagados las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío.  Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.



_____              _____
Firma                                        Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above